UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-24192-CV-WILLIAMS
MAGISTRATE JUDGE REID

CARLOS SANCHEZ,

      Petitioner,

v.

MARK S. INCH.,
SEC'Y, FLORIDA DEP'T OF CORR.,
et al.,

      Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I.    Introduction

*Pro se* petitioner, Carlos Sanchez, a convicted state prisoner has filed an Amended Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence for attempted second-degree murder, the result of a jury verdict, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Case No. F10-29468. [ECF No. 8].

This Cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B), (C); S.D. Fla. Admin. Order 2019-2; and Rules

8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts. [ECF Nos. 2, 18].

For its consideration of the Amended Petition, the Court reviewed the State's Response to the Court's Order to Show Cause [ECF No. 23] along with its supporting exhibits consisting of all pertinent portions of the underlying criminal file in the State's case against Petitioner and transcripts of the relevant proceedings, as well as the subsequent appellate filings and decisions. [ECF Nos. 24, 25]. Petitioner's Reply is also considered. [ECF No. 30].

For the reasons stated below, the Amended Petition should be DENIED.

## II.    Claims

Construing the Amended Petition liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Petitioner raises ten claims, as follows:

1. The trial court erred in denying Petitioner's motion to dismiss the toxicology report. [ECF No. 8 at 5]. The court determined there was no prejudice to Petitioner because the toxicology report was not produced nor was it in the possession of the State. [*Id.*].

2. The trial court abused its discretion in denying Petitioner's motion to suppress where (a) he was detained without reasonable suspicion or probable cause and (b) the eyewitness identifications were obtained through suggestive procedures because he was sitting in the back of a police car at the time the identification was made. [*Id.* at 6].

3. Petitioner's conviction was not supported by competent, substantial evidence; therefore, the judgment and sentence must be reversed. [*Id*. at 7].

4. Counsel was ineffective because he represented Petitioner "while under a conflict of interest." [*Id*. at 8].

5. Counsel was ineffective for (a) concealing the victim's toxicology report and (b) undergoing a false *Richardson*[1] hearing. [*Id*.]. The toxicology report should have been used to establish Petitioner's innocence. [*Id*. at 8-9].

6. Counsel was ineffective for failing to file a motion to dismiss the Information based on an invalid speedy trial waiver. [*Id*. at 9].

7. Counsel was ineffective for failing to object to expert testimony where the trial court did not make a determination whether Dr. Elberg was a qualified expert. [*Id*. at 10].

8. Counsel was ineffective for failing to object where the trial court imposed an unreasonable limit on the cross-examination of witnesses. [*Id*. at 11].

9. The combination of trial court biases, ineffective assistance of counsel, and the prosecutors' prejudice resulted in Petitioner's conviction and sentence, which was a manifest injustice. [*Id*. at 12].

10. Petitioner is actually innocent because his conviction was obtained contrary to federal law and without effective counsel. [*Id*. at 13]. Petitioner was denied due process as he was denied assistance of counsel, the right to a speedy trial, and the right to an unbiased, impartial trial. [*Id*.].

---

[1] *Richardson v. State*, 246 So. 2d 771, 775 (Fla. 1971). In the event of a discovery violation, the trial judge must first determine whether the state violated the discovery rules. If so, the judge must assess "whether the state's violation was inadvertent or willful, whether the violation was trivial or substantial, and most importantly, what effect, if any, did it have upon the ability of the defendant to properly prepare for trial." *Id.*.

### III.    Procedural History

#### A. *Information, Trial, Verdict, Sentencing*

Petitioner was initially charged by Information with aggravated battery causing great bodily harm and violation of the conditions of pretrial release/domestic violence. [ECF No. 25-1 at 29-32]. Later, the State filed an amended information charging Petitioner with the violation and attempted second-degree murder. [*Id*. at 45-48]. On March 13, 2013, a jury found Petitioner guilty of attempted second-degree murder with great bodily harm, permanent disability, or permanent disfigurement. [*Id*. at 150-51]. The court adjudicated Petitioner as a habitual felony offender and sentenced him to twenty-five years in prison. [*Id*. at 170].

#### B. *Direct Appeal*

Petitioner appealed to the Third District Court of Appeals (the "Third DCA"). [*Id*. at 174]. Subsequently, Petitioner filed a motion to correct his sentence pursuant to Fla. R. Crim. P. 3.800(b)(2). [*Id*. at 176-80]. The state court denied the motion; and Petitioner appealed. [*Id*. at 218-220, 222-24]. In his appellate brief, Petitioner raised numerous claims but only one, "issue eight," is relevant to the instant habeas case: counsel was ineffective for concealing evidence of the toxicology report. [ECF No. 25-4 at 97-151]. The Third DCA consolidated the matters into Case Nos. 3D15-

4

20 and 3D13-1453. During the interim, Petitioner initiated a number of other proceedings, which the state court determined were brought prematurely.[2]

On August 3, 2016, the appellate court affirmed Petitioner's conviction finding that there was no evidence that a urine toxicology report ever existed, was ever in the State's possession or that the State was aware of the results of the report. *See Sanchez v. State of Florida*, 215 So. 3d 69 (Fla. 3d DCA 2016). In addition, the Third DCA found there was no merit in his appeal of the denial of the Rule 3.800 motion. *Id*. at 70 n.1.

Petitioner further appealed to the Supreme Court of Florida, which denied review on June 6, 2017. *See Sanchez v. State of Florida*, No. SC16-2197, 2017 WL 2438403 (Fla. Jun. 6, 2017). Petitioner did not further appeal. Thus, Petitioner's conviction became final 90 days later, on **September 4, 2017**, when the time to petition for a writ of certiorari to the Supreme Court of the United States expired. *See* Sup. Ct. R. 13. Accordingly, Petitioner had one year, until **September 4, 2018**, to file a federal habeas petition absent any tolling motions. *See* 28 U.S.C. § 2244(d).

---

[2]These additional proceedings are relevant to the issue of exhaustion and are explained in the respective section below.

## C. Relevant Post-Conviction Proceedings

On or about September 21, 2016, Petitioner filed his first Rule 3.850 motion in state court with a supporting memorandum of law raising various claims.[3] [ECF No. 25-4 at 272-300; ECF No. 25-4 at 1-62]. In a detailed decision, the state court denied post-conviction relief. [ECF No. 25-5 at 221-235]. Petitioner appealed to the Third DCA in Case No. 3D17-0089. [ECF No. 251-52]. His brief seemingly presented only one claim: whether the trial court erred in denying his Rule 3.850 motion without an evidentiary hearing. [ECF No. 25-6 at 263, 269]. However, he did restate his Rule 3.850 claims, in many instances relying only on state law. [ECF No. 25-6 at 262-300; ECF No. 25-7 at 1-16]. The Third DCA affirmed the denial of Petitioner's Rule 3.850 motion, *per curiam* and without written opinion. *See Sanchez v. State of Florida*, 224 So. 3d 230 (Fla. 3d DCA 2017); *see also* [ECF No. 25-7 at 153]. The Third DCA issued its mandate on April 27, 2017. [ECF No. 25-8 at 11].

On April 26, 2017, Petitioner turned to the Supreme Court of Florida and filed an emergency petition for habeas corpus raising a claim of actual innocence and manifest injustice in Case No. SC17-806. [ECF No. 25-8 at 16-67]. On May 23, 2017, Petitioner filed a second Rule 3.800 motion in the trial court alleging the State

---

[3] To maintain brevity, this Report only addresses those claims which are related to the claims Petitioner raises in his federal habeas petition.

6

amended the Information in violation of his right to a speedy trial. [ECF No. 25-11 at 124-133].

On May 12, 2017, the Florida Supreme Court ordered the emergency petition transferred to the trial court as if Petitioner had originally filed the motion in the lower court. [ECF Nos. 25-8 at 283-84, 286-300; 25-9 at 1-37]. On June 22, 2017, the trial court denied the second Rule 3.800 motion finding that his claims were not cognizable under Rule 3.800 and barred because they were previously litigated. [ECF No. 25-11 at 277-279]. The same day, the trial court also denied the second Rule 3.850 motion. [ECF No. 25-10 at 56-59]. The trial court reasoned that all claims but one (alleging scoresheet error) were previously raised and denied; and claims of trial court error are matters properly raised on direct appeal. [*Id*. at 57].

Petitioner appealed the denial of the second Rule 3.850 motion to the Third DCA in Case No. 3D17-2195, alleging "manifest injustice." [ECF No. 25-11 at 2, 7-24]. The appellate court affirmed the denial of the second Rule 3.850 motion, *per curiam* and without written opinion. [*Id*. at 26]; *Sanchez v. State of Florida*, 238 So. 3d 787 (Fla. 3d DCA 2017). On January 29, 2018, the Third DCA issued its mandate. [ECF No. 25-11 at 95]. Petitioner further appealed to the Supreme Court of Florida in Case No. SC18-386. [*Id*. at 97-98]. On March 12, 2018, the Florida Supreme Court dismissed the appeal for lack of jurisdiction. [*Id*. at 109]; *See Sanchez v. State of Florida*, Case No. SC18-386, 2018 WL 1273606 (Fla. Mar. 12, 2018).

7

Petitioner also appealed the denial of the second Rule 3.800 motion in Case No. 3D18-1121. [ECF No. 25-12 at 123; ECF No. 25-13 at 67-85]. On July 25, 2018, the Third DCA affirmed the denial of relief, *per curiam* and without written opinion. *See Sanchez v. State of Florida*, 252 So. 3d 217 (Fla. 3d DCA 2018). The appellate court issued its mandate on September 21, 2018. [ECF No. 25-14 at 21]. Petitioner's appeal to the Supreme Court of Florida was dismissed for lack of jurisdiction. [ECF No. 25-14 at 51]; See Sanchez v. State of Florida, Case No. SC18-150, 2018 WL 4610787 (Fla. Sept. 25, 2018)

Finally, on October 8, 2018, Petitioner timely filed his original federal habeas Petition initiating the instant case [ECF No. 1], followed by an Amended Petition. [ECF No. 8].

## IV.   Applicable Law

### A. *Standard of Review in § 2254 Cases*

This Court's review of Petitioner's claims is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996). *See Abdul–Kabir v. Quarterman*, 530 U.S. 233, 246 (2007); *see also Davis v. Jones*, 506 F.3d 1325, 1331, n.9. (11th Cir. 2007). "AEDPA limits the scope of federal habeas review of state court judgments." *Pittman v. Sec'y, Fla. Dep't of Corr.*, 871 F.3d 1231, 1243 (11th Cir. 2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions

in the state criminal justice systems, and not as a means of error correction.'" *Ledford v. Warden, Ga. Diagnostic and Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)) (quotation marks omitted)).

Therefore, a federal habeas court may grant habeas relief from a state court judgment only if the state court's decision on the merits of the issue was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). In that respect, the Eleventh Circuit has made clear that:

> [a] state court's decision rises to the level of an unreasonable application of federal law only where the ruling is 'objectively unreasonable, not merely wrong; even clear error will not suffice.' *Virginia v. LeBlanc*, 582 U.S. ___, ___, 137 S. Ct. 1726, 1728, 198 L.Ed.2d 186 (2017) (*per curiam*) (quoting *Woods v. Donald*, 575 U.S. ___, ___, 135 S. Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) (*per curiam*)). This standard is "meant to be" a difficult one to meet. *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 786, 178 L.Ed.2d 624 (2011).

*Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017).

Federal courts "must also presume that 'a determination of a factual issue made by a State court [is] correct,' and the petitioner 'ha[s] the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Morrow v.*

9

*Warden*, 886 F.3d 1138, 1147 (11th Cir. 2018) (quoting 28 U.S.C. § 2254(e)(1)).

Further, "[t]his presumption of correctness applies equally to factual determinations

made by the state trial and appellate courts." *Pope v. Sec'y for Dep't of Corr.*, 680

F.3d 1271, 1284 (11th Cir. 2012) (quoting *Bui v. Haley*, 321 F.3d 1304, 1312 (11th

Cir. 2003)).

More recently, the Supreme Court of the United States in *Wilson v. Sellers*,

584 U.S. ___, 138 S. Ct. 1188, 1194 (2018), concluded there is a "look through"

presumption in federal habeas corpus law, as silence implies consent. *See also*

*Kernan v. Hinojosa*, 578 U.S. ___, 136 S. Ct. 1603, 1605-1606 (2016) (*per curiam*)

(adopting the presumption that silence implies consent but refusing to impose an

irrebuttable presumption). Where the state court's adjudication on the merits of a

claim is unaccompanied by an explanation, the Supreme Court of the United States

instructs that:

> [T]he federal court should 'look through' the unexplained
> decision to the last related state-court decision that does provide
> a relevant rationale. It should then presume that the unexplained
> decision adopted the same reasoning.

*Wilson*, 584 U.S. at ___, 138 S. Ct. at 1192. In other words, if the last state court to

decide a prisoner's federal claim provides an explanation for its merits-based

decision in a reasoned opinion, "a federal habeas court simply reviews the specific

reasons given by the state court and defers to those reasons if they are reasonable."

*Id*. However, if the relevant state-court decision on the merits is not accompanied by

10

a reasoned opinion, because it was summarily affirmed or denied, a federal court "should 'look through' the unexplained decision to the last state-court decision that does provide a relevant rationale." *Id.*

Moreover, the Supreme Court of the United States has repeatedly admonished that "[t]he petitioner carries the burden of proof" and that the § 2254(d)(1) standard is a high hurdle to overcome. *See Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington*, 562 U.S. at 102-103 (quotation marks omitted)); *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011) (acknowledging that Section 2254(d) places a difficult burden of proof on the petitioner); *Renico v. Lett*, 559 U.S. 766, 777 (2010) ("AEDPA prevents defendants and federal courts from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (Section 2254(d) "demands that state-court decisions be given the benefit of the doubt."); *see also Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d at 1053 (opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error).

### B. Ineffective Assistance of Counsel Principles

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *See*

*Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *see also Harrington*, 562 U.S. at 104. If the petitioner cannot meet one of *Strickland's* prongs, the court does not need to address the other prong. *See Strickland*, 466 U.S. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *see also Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). To establish prejudice, the petitioner must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694.

For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *see also Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant, therefore, must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

It is beyond dispute that habeas petitioners bear the burden of proof in habeas proceedings. *See Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008); *see*

*also Hill v. Linaham*, 697 F.2d 1032, 1036 (11th Cir. 1983). This axiom is so well-settled that *Strickland* itself placed the burden of proof on habeas litigants, who, like Petitioner, seek to invoke the Sixth Amendment doctrine. *See generally Strickland*, 466 U.S. at 695-96; *see also Shiver v. United States*, 619 F. App'x 864, 865 (11th Cir. 2015). Thus, by requiring habeas litigants to bear the burden of showing constitutional error, criminal proceedings are treated as "valid until proven otherwise." *Occhicone v. Crosby*, 455 F.3d 1306, 1310 (11th Cir. 2006).

In fact, federal courts regularly deny ineffective assistance of counsel claims on the basis that the allegations are too general, too conclusory, or too vague to warrant relief. *See, e.g., Price v. Allen*, 679 F.3d 1315, 1325 (11th Cir. 2012). Denying on this basis is appropriate because, unlike the "notice pleading" standard authorized under Fed. R. Civ. P. 8, a "heightened pleading" requirement exists in § 2254 proceedings. *See Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011). To meet this heightened pleading standard, of course, the habeas petition or motion to vacate must be specific on factual matters. *See id*. Bare, conclusory, allegations of ineffective assistance do not satisfy *Strickland*. *See Boyd v. Comm'r, Ala. Dep't. of Corr.*, 697 F.3d 1320 (11th Cir. 2012); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").

## V.    Discussion – Timeliness, Exhaustion, and Procedural Bar

### A.  Timeliness

Parties properly assert that the instant petition is timely filed.

### B.  Exhaustion and Procedural Bar as to Claims 2, 3, 5, 6, 7, 8, 9, and 10

The State asserts that **Claims 2, 3, 5, 6, 7, 8, 9, and 10** are procedurally barred from federal habeas review. [ECF No. 23 at 33-48]. In his Reply, Petitioner disagrees that these claims are unexhausted. [ECF No. 30 at 1]. It bears noting, that the Court, in its Order to Amend, warned Petitioner "of the futility of presenting constitutional claims within a federal habeas petition that have not been exhausted at the state level." [ECF No. 7 at 6].

It is axiomatic that issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted prior to their consideration on the merits. *See Anderson v. Harless*, 459 U.S. 4 (1982); *see also Hutchings v. Wainwright*, 715 F.2d 512 (11th Cir. 1983). Exhaustion requires that a claim be pursued in the state courts through the appellate process. *See Leonard v. Wainwright*, 601 F.2d 807 (5th Cir. 1979). Both the factual substance of a claim and the federal constitutional issue itself must have been expressly presented to the state courts to achieve exhaustion for purposes of federal habeas corpus review. *See Baldwin v. Reese*, 541 U.S. 27 (2004).

14

Exhaustion also requires review by the state appellate and post-conviction courts. *See Mason v. Allen*, 605 F.3d 1114 (11th Cir. 2010); *see also Herring v. Sec'y Dep't of Corr.*, 397 F.3d 1338 (11th Cir. 2005). In Florida, exhaustion is ordinarily accomplished on direct appeal. If not, it may be accomplished by the filing of a Rule 3.850 motion and an appeal from its denial, *see Leonard*, 601 F.2d at 808, or, in the case of a challenge to a sentence, by the filing of a Rule 3.800 motion and an appeal from its denial. *See Caraballo v. State*, 805 So. 2d 882 (Fla. 2d DCA 2001).

Ineffective assistance of trial counsel ("IATC") claims are generally not reviewable on direct appeal but are properly raised in a motion for post-conviction relief. *See Kelley v. State*, 486 So. 2d 578, 585 (Fla. 1986). Furthermore, in Florida, claims concerning representation received by appellate counsel are properly brought by way of a petition for habeas corpus relief to the appropriate district court of appeal. *See State v. District Court of Appeal, First District*, 569 So. 2d 439 (Fla. 1990). Exhaustion also requires that an IATC claim not only be raised in a Rule 3.850 motion, but the denial of the claim be presented on appeal. *See Leonard*, 601 F.2d at 808.

"It is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317 (11th Cir. 2004) (citing *Picard v.*

*Connor*, 404 U.S. at 275-76; *Anderson*, 459 U.S. at 6). A petitioner is required to present his claims to the state courts such that the courts have the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." *Picard*, 404 U.S. at 275-77. To satisfy this requirement, "[a] petitioner must alert state courts to any federal claims to allow the state courts an opportunity to review and correct the claimed violations of his federal rights." *Jimenez v. Fla. Dep't. of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

"A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin*, 541 U.S. at 32.

To circumvent the exhaustion requirement, Petitioner must establish that there is an "absence of available state corrective process" or that "circumstances exist that render such process ineffective to protect [his] rights." 28 U.S.C. § 2254(b)(1)(B); *see also Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). Petitioner makes no such showing here.

Failure to exhaust a claim can result in a procedural default bar in federal court if it is obvious that the unexhausted claim would now be procedurally barred in state

court. *See Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). The federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Id.* at 1303. However, a petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. *See Spencer v. Sec'y, Dep't of Corr.*, 609 F.3d 1170, 1179-80 (11th Cir. 2010).

To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *see also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. *See Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Petitioner initiated a number of proceedings that failed to preserve his claims.[4] On November 18, 2014, Petitioner filed an "emergency petition" with the Supreme Court of Florida. Petitioner sought a writ of habeas corpus based on actual innocence, manifest injustice claims, and manifest constitutional error, similar to Claims 9 and 10 as raised in the instant federal habeas case. [ECF No. 25-2 at 85-

---

[4] In an effort to maintain brevity, the Report does not identify every case initiated by Petitioner that is not relevant to the claims raised in the instant federal habeas case.

135]. However, because Petitioner was represented by counsel in his then-pending direct appeal, the court dismissed the emergency petition pursuant to *Johnson v. State*, 974 So. 2d 363 (Fla. 2008) and *Logan v. State*, 846 So. 2d 472 (Fla. 2003). [ECF No. 25-3 at 166].

Next, on or about December 22, 2014, Petitioner filed his first § 2254 petition in this Court in Case No. 14-2485-CV-Martinez. Yet, the Court dismissed the matter as premature given the pending direct appeal and failure to exhaust state remedies. Petitioner appealed but the Eleventh Circuit Court of Appeals denied his motion for certificate of appealability. [ECF No. 25-3 at 289].

On or about January 16, 2015, Petitioner filed a writ of habeas corpus in the Third DCA in Case No. 3D15-203 alleging various claims of official "misconduct," trial court bias, invalid waiver of his right to speedy trial, insufficient evidence to support a conviction, a "fraudulent *Richardson* hearing." [ECF No. 25-4 at 2-51]. The Third DCA dismissed the case pursuant to *Logan*, 846 So. 2d at 472, with a written opinion detailing Petitioner's prolific filing history during the pendency of his direct appeal. *See Sanchez v. State of Florida*, 167 So. 3d 476 (Fla. 3d DCA 2015).

Any claims raised in the emergency writ before the Supreme Court of Florida, the first § 2254 proceeding, and in the writ of habeas corpus in Case No. 3D15-203 were not properly raised and did not serve to exhaust any of Petitioner's claims.

These proceedings were neither a direct appeal nor pursuant to Fla. R. Crim. P. 3.850 and an appeal thereof. Rather, these proceedings were initiated, improperly, *during the pendency* of a direct appeal.

1. Claim 2

In **Claim 2**, Petitioner claims that court abused its discretion in denying Petitioner's motion to suppress where (a) he was detained without reasonable suspicion or probable cause and (b) the eyewitness identifications were obtained through suggestive procedures because Petitioner was in the back seat of the police car at the time. [ECF No. 8 at 6].

Petitioner did not raise **Claim 2(a)** on direct appeal or in his Rule 3.800 motion. [ECF No. 25-1 at 234-282; ECF No. 25-4 at 97-151]. Neither did Petitioner raise the claim in his Rule 3.850 motion. [ECF No. 25-4 at 272-318; ECF No. 25-5 at 1-62]. Thus, a claim never presented to the state court is unexhausted.

As to **Claim 2(b)**, on direct appeal, Petitioner's claimed that the trial court abused its discretion in denying the motion to suppress. [ECF Nos. 25-1 at 268-271]. Specifically, Petitioner argued the identification made by two named witnesses was obtained while Petitioner was in the back seat of the police car. [*Id*.]. There, Petitioner relied on state law to support his claim. [*Id*. at 270]. Although, the claim explained that several factors should be considered per *Neil v. Biggers*, 409 U.S. 188, 199 (1972), Petitioner did not present this as a federal constitutional claim to

the state court. "[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'" *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005).[5]

Even if this claim was not unexhausted, Petitioner fails to provide sufficient facts to support his claim. In his federal habeas petition, he names no witness. [ECF No. 8 at 6]. Rule 2 of the Rules Governing Section 2254 Cases requires a statement of the facts supporting each ground. Even though district courts must liberally construe *pro se* pleadings, they are not required to rewrite complaints to create a viable cause of action where one does not otherwise exist. *GJR Invs. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("[I]n the case of pro se litigants [the] leniency [afforded] does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action[.]").

**Claim 2** should be denied as unexhausted or as otherwise factually insufficient.

---

[5] *See Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("When it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as [procedurally defaulted].").

2.  Claim 3

In **Claim 3**, Petitioner alleges that his conviction was not supported by competent substantial evidence because there was no physical evidence linking him to the charged offense, that there was no evidence the victim in the case was the same person hospitalized because the HIPPA waiver did not include a person's name only a date of birth; and there was no evidence of the victim's date of birth presented at trial. [ECF No. 8 at 7]. On direct appeal, Petitioner claimed that his conviction was not supported by competent substantial evidence under state law, for the same reasons. [ECF No. 25-1 at 271-276]. However, on direct appeal, this claim, while predicated on the same set of facts, was not presented as a federal claim to the state courts as required by *Baldwin v. Reese.*

Petitioner did not "alert state courts to" a federal constitutional provision. *Jimenez*, 481 F.3d at 1342. Thus, **Claim 3** should be denied as not properly exhausted.

3.  Claim 5(b)

In **Claim 5(b)**, Petitioner claims that counsel was ineffective for subjecting him to a false *Richardson* hearing. [ECF No. 8 at 8]. Petitioner raised a somewhat related claim in his Rule 3.850 motion alleging that a combination of failures resulted in a manifest injustice including "numerous" and "false *Richardson*" hearings. [ECF No. 25-4 at 297-303]. Because this was not presented as an

21

ineffective assistance of counsel claim to the state courts, it is necessarily unexhausted. [*Id*.]. Accordingly, **Claim 5(b)** should be denied.

4. Claim 6

In **Claim 6**, Petitioner claims counsel was ineffective for failing to file a motion to dismiss the Information based on an invalid speedy trial waiver. [ECF No. 8 at 9]. He claims that the state was prohibited from amending the Information after the expiration of the 175-day speedy trial rule; therefore, counsel should have moved to dismiss. [*Id*.]. Within his Rule 3.850 motion, Petitioner raised two closely related claims. First, he claimed that the public defenders' motions to continue the proceedings violated his right to a speedy trial. [ECF No. 25-4 at 281-282]. Second, Petitioner claimed that counsel was ineffective for failing file pre-trial motions, including a motion to dismiss, but based on *Brady* [6] and *Giglio* [7] violations and not an invalid speedy trial waiver. [*Id*. at 282-83]. But these claims fundamentally differ from the claim raise in the instant federal habeas petition. The trial court, in denying Petitioner's Rule 3.850 motion determined counsel was not ineffective for the invalid waiver of speedy trial as refuted by the record: privately retained counsels were granted *seven* defense or joint continuances and no demands for a speedy trial

---

[6] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (a prosecutor's suppression of material evidence favorable to the defendant deprives the defendant of a fundamentally fair trial).

[7] *Giglio v. United States*, 405 U.S. 150 (1972) (a prosecutor's failure to disclose material evidence affecting the credibility of a witness violates due process and warrants a new trial).

were filed. [ECF No. 25-5 at 222, 224]. In addition, counsel was not ineffective for failing to file motion to dismiss where the state filed an amended Information outside the speedy trial period. [*Id*. at 229]. The public defender withdrew more than a year before the amended motion was filed and during that period, privately retained counsels were granted numerous continuances, "none of which" Petitioner "has taken issue." [*Id*.]. In short, there was no invalid speedy trial waiver. There was no prejudice given the later continuances.

When Petitioner appealed the denial of his Rule 3.850, he presented this claim -- just factually -- for the first time: counsel failed to move for dismissal where there was an invalid waiver of his speedy trial rights. [ECF No. 25-6 at 299-300; ECF No. 25-1 at 1]. Not only did Petitioner fail to preserve a *federal* claim by only generally alleging ineffective assistance of counsel, he failed to first present this issue to the lower state court. This did not exhaust the claim.

Later, in his *second* Rule 3.800 motion to correct his sentence, Petitioner alleged the state amended the Information in violation of his right to a speedy trial, but this is still not the same as the ineffective assistance of counsel claim he presents in the instant federal habeas proceeding. [ECF No. 25-11 at 124-133].

Accordingly, **Claim 6** should be denied as unexhausted.

5. Claim 7

In **Claim 7**, Petitioner claims counsel was ineffective for failing to object to expert testimony where the trial court did not make a determination as to whether Dr. Elberg was a qualified expert. [ECF No. 8 at 10]. According to Petitioner, the State moved to not have Dr. Elberg qualified or tendered as an expert based on new case law, which was never disclosed. [*Id*.]. Petitioner made the same claim in his Rule 3.850 motion. [ECF No. 25-4 at 291-93, 25-5 at 42-48]. In denying relief, the trial court determined the claim was refuted by the record. [ECF No. 25-5 at 230]. Relying on the trial transcript, the trial court explained that prior to trial, it was determined Dr. Elberg would be allowed to offer expert testimony. [*Id*.]. At trial, Dr. Elberg did testify as to her qualifications as a neurologist and as medical director of emergency services at Jackson Memorial Hospital. [*Id*.].

However, when Petitioner presented this claim on appeal to the Third DCA, he only presented it as a state law claim and not as a federal claim.[8] Accordingly, **Claim 7** should be denied as unexhausted.

**Claims 2, 3, 5, 6, and 7** are unexhausted because Petitioner did not properly raise them before the state trial court followed by an appeal thereof or alternatively failed to raise present the claims as federal constitutional violations. As the State

---

[8] Compare and contrast with Ground 1(f) on appeal (claiming right to conflict-free counsel] where Petitioner presented his claim pursuant to *Strickland*. [ECF No. 25-6 at 286]. Petitioner failed to present the claim of counsel's failure to object to expert testimony pursuant to federal law.

maintains, Petitioner has not given the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). And, because Petitioner has already litigated two Rule 3.850 motions, he would be procedurally barred from filing a successive petition at this juncture. *See Mills v. Florida*, 684 So. 2d 801, 804 n. 3 (Fla. 1996).

"A petitioner who fails to exhaust his claim is procedurally barred from pursuing that claim on habeas review in federal court unless he shows either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1353 (11th Cir. 2012). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of new evidence. *Id*. Petitioner has made none of the requisite showings to excuse his procedural default.[9]

---

[9] Petitioner is cautioned that arguments not raised before the Magistrate Judge cannot be raised for the first time in objections to the Undersigned's Report. *See Starks v. United States*, 2010 WL 4192875 at *3 (S.D. Fla. 2010); *see also United States v. Cadieux*, 324 F. Supp. 2d 168 (D.Me. 2004). "Parties must take before the magistrate, 'not only their best shot but all of the shots.'" *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) (quoting *Singh v. Superintending Sch. Comm.*, 593 F. Supp. 1315, 1318 (D. Me. 1984)). Thus, "[W]here a party raises an argument for the first time in an objection to a report and recommendation, the district court may exercise its discretion and decline to consider the argument." *Daniel v. Chase Bank*

This failure bars federal habeas review of **Claims 2, 3, 5(b), 6, and 7**. *See Coleman v. Thompson*, 501 U.S. 722, 734-35 (1991). However, because Petitioner did not provide factual support for **Claims 8, 9, and 10**, in the instant federal petition, the Court is unable to determine whether his claims were properly exhausted at the State level. Therefore, **Claims 8, 9, and 10** are addressed on the merits in subsections D and E below.

### C.  Claim 1 & Claim 5(a) Should be Denied on the Merits

**Claims 1** and **5(a)** are sufficiently related to address together. In **Claim 1**, Petitioner claims the trial court erred in denying his motion to dismiss the toxicology report. [ECF No. 8 at 5]. According to Plaintiff, the court determined there was no prejudice to Petitioner because the toxicology report was not produced nor was it in the possession of the State. [*Id*.]. The State asserts the toxicology report was never in its possession. [ECF No. 23 at 54-58]. In **Claim 5(a)**, Petitioner claims counsel was ineffective for concealing the victim's toxicology report. [*Id*. at 8]. The toxicology report should have been used to establish Petitioner's innocence. [*Id*. at 8-9]. The State asserts the record refutes the claim. [ECF No. 23 at 68].

---

*USA, N.A.*, 650 F. Supp. 2d 1275, 1278 (N.D. Ga. 2009) (citing *Williams v. McNeil*, 557 F.3d 1287 (11th Cir. 2009). Here, if Petitioner attempts to raise a new claim or argument in support of this § 2254 petition, the Court should exercise its discretion and decline to address the newly-raised arguments.

Petitioner's claims are controverted by the record. Petitioner's counsel filed a motion to compel evidence, specifically, the victim's toxicology results, followed by a motion to dismiss on the same issue. [ECF No. 25-1 at 36-37, 39-43, 153-57]. The court dismissed the motion because there was no evidence that the toxicology report actually existed or that they were in the State's possession. Petitioner raised these issues on direct appeal. [*Id*. at 235, 257-267]. The Third DCA determined that there was no evidence that the report existed, was ever in the State's possession, or that the State was aware of the results. *See Sanchez*, 215 So. 3d at 69. Hospital records certified that no such screening existed. *Id*. at 70 n. 2. Moreover, the claims within the Rule 3.800 motion were deemed as without merit.

Petitioner also raised Claim 5(a) within his Rule 3.850 motion. [ECF No. 25-4 at 288-89]. In denying relief, the trial court determined counsel was not ineffective for concealing the toxicology report because counsel was able to locate at least one toxicology report prior to trial, the state filed an amended discovery exhibit as to that report, and the one report was admitted into evidence during trial. [ECF No. 25-5 at 228]. As to another hypothetical report, the trial court determined counsel made extensive efforts to determine the existence of the report; but the hospital confirmed no such report was known to exist. [*Id*. at 229].

Counsel clearly attempted to obtain the "hypothetical" toxicology report, but it did not exist. Counsel is not ineffective for concealing medical records he never

27

had. The state court decisions are not contrary to nor an unreasonable application of established federal law. Accordingly, **Claim 1** and **Claim 5(a)** should be DENIED as without merit.

*D. Claims 4, 8, 9, and 10 Are All Presented Without Factual Support, Thus, Warranting the Denial of Relief*

In **Claim 4,** Petitioner claims that counsel was ineffective because a conflict of interest existed. [ECF No. 8 at 7-8]. Petitioner does not give any indication as to what the conflict of interest may have been. [*Id*.]. In **Claim 8**, Petitioner alleges counsel was ineffective for failing to object to the trial court's unreasonable limitation on the examination of witnesses. [*Id*. at 11-12]. Petitioner does not identify any facts as to what kind of limitation was imposed or which witness testimony was limited. [*Id*.]. In **Claim 9**, Petitioner asserts that the bias and impartiality of the trial court, "combined with the "prejudicial acts or inactions" of defense counsel and the state attorney resulted in the denial of due process, the effective assistance of trial counsel and the right to a fair an impartial jury. [*Id*. at 12-13]. Petitioner fails to outline what the alleged biases, "prejudicial acts or inactions" are. [*Id*.]. In **Claim 10**, Petitioner makes a similar allegation: that he was denied due process when he was "constructively denied assistance of counsel, his right to a speedy trial, a fair and unbiased, impartial trial, right to conflict-free counsel." [*Id*. at 13]. Yet, again, he failed to provide any supporting facts. [*Id*. at 13-14]. The State is correct in its assertion that these claims all "fail to state any relevant facts" and "should be

28

dismissed with prejudice as facially insufficient. [ECV No. 23 at 1, 63-64, 74-75, 77-, 79-

Although Petitioner claims he raised similar claims in the trial court, as presented here, the claims are bereft of any factual support.[10] [*Id.* at 7-8, 11-14]. The Court Ordered Petitioner to amend his initial Petition, cited certain deficiencies including directing him to "state the facts supporting each ground" pursuant to the Rules Governing Section 2254 Cases. [ECF No. 7 at 2]. "What is relevant in this Court is the relationship of the facts to the claim asserted in the petition." [*Id.* at 3]. Petitioner ignored the directive with respect to a number of his claims.

The Court is not required to rewrite Petitioner's pleadings. *See GJR Invs.*, 132 F.3d at 1369. Petitioner may not shift the burden to this Court to mine through a voluminous record, including three days of trial transcripts, to determine whether there is any evidence to support his claims. *Cf. Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1474, 1481 n. 12 (11th Cir. 1997); *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 373 (11th Cir. 1997) ("We are not obligated to cull the record ourselves in search of facts not included in the statements of fact.").

A bare, conclusory statement without factual support does not warrant relief. Petitioner cannot demonstrate that counsel was deficient under *Strickland*. Because

---

[10] As narrated previously, Petitioner cannot raise new arguments in objections to the Report.

Petitioner failed to plead facts on which an ineffective assistance claim could be based, **Claims 4, 8, 9, and 10** fail and should be DENIED.

### *E. Claim 10 Also Fails as an Actual Innocence Claim*

To the extent that **Claim 10** might be construed as an "actual innocence" claim, the claim fails. [ECF No. 8 at 13]. The State correctly points out that "actual innocence is not a freestanding claim cognizable upon federal review. [ECF No. 23 at 79].

The claim may only be used to bypass certain procedural bars. *See Herrera v. Collins*, 506 U.S. 390, 400-01, 404-05 (1993) (rejecting a freestanding claim of actual innocence based on newly discovered evidence on federal habeas). Courts have "equitable authority to invoke the miscarriage of justice exception to overcome expiration of the statute of limitations governing a first federal habeas petition." *McQuiggin v. Perkins*, 569 U.S. 383, 397 (2013). However, "[t]he miscarriage of justice exception . . . applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Id.* at 394-95 (quoting *Schlup*, 513 U.S. 298, 303 (1995)). This type of claim is commonly referred to as an "actual innocence" claim. *McQuiggin*, 569 U.S. at 392 (citation omitted); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998).

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Johnson v. Fla. Dep't Of Corr.*, 513 F.3d 1328, 1334 (11th Cir. 2008) (quoting *Bousley*, 523 U.S. at 623). "Actual innocence claims must also be supported 'with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.'" *Rich v. Dep't of Corr. State of Florida*, 317 F. App'x 881, 882 (11th Cir. 2008) (*per curiam*) (quoting *Schlup*, 513 U.S. at 324).

Still, Petitioner bears the burden to adequately allege actual innocence. *Schlup*, 513 U.S. at 327. Furthermore, Petitioner bears the overall burden of proof under § 2254. *Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) (citing cases).

No such showing has been made here. To the contrary, on the record before the Court, Petitioner's conviction is the result of a jury verdict, which was affirmed on direct appeal. *See Sanchez*, 215 So. 3d at 69. Moreover, the allegations of a biased court, ineffective assistance of counsel, and denial of the right to a speedy trial are challenges to the legal sufficiency of his conviction not his factual innocence. No fundamental miscarriage of justice will result by denying this federal Petition.

## VI.   Evidentiary Hearing

Based upon the foregoing, any request by Petitioner for an evidentiary hearing on the merits of any or all of his claims should be denied since the habeas petition

can be resolved by reference to the state court record. *See* 28 U.S.C. § 2254(e)(2); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (holding that if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing); *Atwater v. Crosby*, 451 F.3d 799, 812 (11th Cir. 2006) (addressing the petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and federal courts were improperly denied, the court held that an evidentiary hearing should be denied "if such a hearing would not assist in the resolution of his claim."). Petitioner has failed to satisfy the statutory requirements in that he has not demonstrated the existence of any factual disputes that warrant a federal evidentiary hearing.

## VII.   Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA") to do so. *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009).

This Court should issue a COA only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Alternatively, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

After review of the record, Petitioner is not entitled to a certificate of appealability. Nevertheless, as now provided by the Rules Governing § 2254 Proceedings, R. 11(a), 28 U.S.C. § 2254: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the District Judge in the objections permitted to this Report and Recommendation.

## VIII.   Recommendations

Based upon the foregoing, it is recommended that this Amended Petition for Writ of Habeas Corpus [ECF No. 8] relief be DENIED, that NO certificate of appealability issue, and that the case be CLOSED.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to do so will bar a de novo determination by the District Judge of anything in the recommendation and will bar

an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C.

§ 636(b)(1)(C); *see also Thomas v. Arn*, 474 U.S. 140, 149 (1985).

SIGNED this 9th day of July, 2020.


_____
UNITED STATES MAGISTRATE JUDGE

cc:     Carlos Sanchez
        412856
        Everglades Correctional Institution
        Inmate Mail/Parcels
        1599 SW 187th Avenue
        Miami, FL 33194
        PRO SE

        Jonathan David Tanoos
        Florida Office of Attorney General
        3507 E. Frontage Rd., Suite. 200
        Tampa, FL 33607-7013
        813-287-7900
        Fax: 813-281-5500
        Email: jonathan.tanoos@myfloridalegal.com